Merrick,J.
This is an áction by plaintiff R& D Drywall, Inc. (“R& D”) to recover against defendants Reza and Ladan Shirazi for breach of a home construction contract or, alternatively, for “unjust enrichment.” The defendants counterclaimed for G.L.c. 93A punitive damages for R & D’s alleged violation of of G.L.c. 93, §48.[2] Judgment was entered for R & D on both its complaint: and the defendants’ counterclaim, and the defendants now appeal said judgment and the court’s award of damages to R & D.
The reported evidence indicates that the defendants’ home was badly damaged in afire on November 26,1989.The next day, defendant Reza Shirazi (“defendant”)[3] met with an insurance adjuster and building inspector at his home. When it was determined that the defendant needed a builder to advise him, the defendant left the meeting and went to a nearby construction site which he had remembered seeing. The site belonged to R & D, and the defendant there approached a Mr. Sparrow,[4] R & D’s general manager, and asked him to come to the meeting at the defendant’s home. Sparrow did so, and all parties present at the meeting then agreed that while the defendants’ house could be repaired, it would be more economical to raze the structure and build a new home. The defendant requested R & D to prepare plans and an estimate for such work.
Sparrow reviewed plans from a previous R & D job with the defendant, and spent time redrafting such plans to suit the defendant’s requirements. The latter included a change in the existing house foundation in order to relocate the garage entrance to another side of the house. On December 20,1989, the defendant and Sparrow signed the following agreement written on R & D letterhead:
R & D Drywall, Inc. agrees to obtain a Building Permit and proceed with Preliminary Construction Work of Foundation Alterations and repair in Accordance with plans prepared for Reza Shirazi on 100 Goodale St., *217 Marlboro MA.
Cost for permit and foundation work not to exceed $6,000.00.
Sparrow also prepared a $315,000.00 estimate and proposal for the full construction of the house, but the trial judge did not find that the parties ever entered into a contract based on such proposal.
The defendant paid a deposit of $2,000.00, and R & D obtained the necessary permits and proceeded with the foundation work. R& D performed dampproofing and sandblasting on the foundation, and provided hay bales in awetlands area of the house lot at the request of the building inspector. R & D also paid the bill of one Cascelli Trucking for demolition of part of the foundation in the amount of $1,040.00. The parties dispute whether R& D provided 400cubic yards of fill to relocate the driveway.
In January, 1990, Sparrow learned that the defendant, acting as his own general contractor, had begun construction of the house using a building permit obtained by R & D. There was conflicting testimony at trial as to whether R & D had actually provided building plans to the defendant; there is no reported evidence, however, that the defendant used any R & D plans.
On February 12,1990, Sparrow presented the following invoice on R& D letterhead to the defendant:
Invoice
Completion of Foundation Alteration and Repair Work
per Agreement
Total Price 6,000.00
Less Deposit (2,000.00)
Less Slab ( 800.00)
$3,200.00
Costs for Foundation Dampproofing 150.00
Cost for Haybales @Wetlands 150.00
Cost for Sandblasting (Superior Sandblasting) 700.00
Labor for Drawing Plans & Obtaining Permits etc. 800.00
$5,000.00
The defendant paid the $5,000.00 total that day, and the invoice was signed by Sparrow as “Paid in Full.”The bill also bears the hand printed notation, “FINALBILL,” but Sparrow denied at trial that such notation was on the invoice when he gave it to the defendant.
This action was commenced on February 20, 1990. R & D’s complaint sought damages for breach of an alleged $315,000.00 contract to construct the house and, alternatively, for unjust enrichment. The defendants denied the existence of a contract, claimed an accord and satisfaction for the work performed and alleged a violation by R & D of G.L.c. 93, §48 as both a defense and a G.L.c. 93A counterclaim.
After commencement of suit, R & D produced a document on its letterhead which purported to be ajanuary 18,1990 “invoice” totalling $3,540.00for fill and the Cascelli demotion work. The document was never received by the defendants, and R & D’s counsel conceded at trial that it was merely a summary of the plaintiffs claim for work performed.
The trial judge did not find for R& D on the alleged home construction contract, but instead made afinding for R & D in quantum meruit for “$8,540.00 for work done and time and effort spent on behalf of the defendant.’’The court also entered judgment for R & D on the defendants’ G.L.c. 93A counterclaim.
1. The defendants claim to be aggrieved by the court’s action on numerous requests for rulings that a finding for the defendants was required as a matter of law on R & D’s *218 contract claim. As the court did not find for R& D on its contract claim, the defendants’ requests were inapplicable to the court’s subsidiary and general findings for R & D in quantum meruit. There was thus no error in the court’s disposition of stich requests. See, generally, Fain v. Fitzhenry-Guptill Co., 335 Mass. 6, 9 (1956).
2. Various requests by the defendants inartfully raise the issue of whether R & D’s alleged violation of G.L.c. 93, §48 precludes its recovery herein in quantum meruit. The defendants’ G.L.c. 93A counterclaim was also based on such alleged violation of G.L.c. 93, §48. The short answer to the defendants’ contention is that the trial court did not find such a statutory violation by R & D, but instead ruled that there was no merit to the defendants’ G.L.C. 93, §48[5] claims. There was no error.
Modeled upon a Federal Trade Commission regulation for door-to-door sales transactions, G.L.c. 93, §48 creates consumer rights of cancellation and refund in certain home solicitation sales situations. See generally, H.J. ALPERIN & R F. CHASE, CONSUMER RIGHTS & REMEDIES, §§55-56 (1979 & Supp. 1993). The statute applies to those contracts executed “at a place other than the address of the seller or lessor,” and the trial judge was not required to find that §48 was applicable in the circumstances of this case wherein there was no home solicitation. Id., §56 (1993 Supp.), citing Brown v. Jacob, 476 N.W. 2d 156 (Mich. 1991) ; All American Pools, Inc. v. Lato, 569 A.2d 562 (Conn. 1990). The defendant herein first approached Sparrow at R & D’s work site and requested his construction appraisal and estimates. The reported evidence indicates that there were numerous, subsequent conversations between the parties by telephone and at various locations, including both R& D’s and the defendant’s places of business, which culminated in the parties’ implied agreement(s) for the labor and materials supplied by R & D. There is no reported evidence of any cancellation effort or demand for refund by the defendant.
Even where the statute is applicable, the difficulty of applying G.L.c. 93, §48 to cases in which recovery is sought for labor and materials which have already been supplied has been recognized. See, e.g., Hodgson v. Phillip, 1991 Mass. App. Div. (So. Dist.) 67, 69; Resnic v. Toleas, 56 Mass. App. Dec. (No. Dist.) 54, 61 (1975). Thus it has been held that a violation of the statute does not necessarily bar recovery in quantum meruit.
[T]he use of a quasi-contract remedy will not encourage sellers to ignore the ‘cool-off provisions of the statute because we treat the measure of damages in unjust enrichment as the value of benefits conferred rather than the contract price... .The cost to the seller is not determinative. Indeed, his profits should be excluded from the sum — In many cases, the remedy will be substantially less than the contract price; in others there may be no *219 recovery at all.
Continental Products, Inc. v. Oliveira, Mass. App. Div. Adv. Sh. (So. Dist.) (1978) 380, 389.[6]
3. Defendants’ request for ruling of law number 8 states:
Upon all the evidence, as a matter of law, the Plaintiff delivered to the Defendants a ‘final bill’ marked ‘paid in full’ in return for a payment of $5,000.00 received from the defendants on February 13, 1990, thereby extinguishing any and all additional and further obligations for the payment of money by the Defendants to the Plaintiffs.
Request number 8 improperly posited a mixed finding of fact and ruling of law and was correctly denied on that basis. Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944).
Moreover, the defendants were not entitled to a finding in their favor on this issue. “Whether an accord and satisfaction has been proved is a question offact on which the defendanthas the burden of proof.” Wong v. Paisner, 14 Mass. App. Ct. 923, 924 (1982). The conflicting evidence at trial as to whether the February 12,1990 invoice was designated and understood by both parties as a “final bill,” and whether the defendants’ $5,000.00 payment was offered and accepted as full payment on all of R & D’s claims, would have permitted, but did not require, a finding of an accord and satisfaction herein.
4. Finally, the defendants charge the trial court with error in its assessment and award of $8,540.00 in damages in quantum meruit. A review of the record in its entirety renders unavoidable “the definite and firm conviction that a mistake” was made in awarding such damages herein. Freyermuth v. Lutfy, 376 Mass. 612, 615 (1978).
The only evidence upon which damages in the amount of $8,540.00 could have been calculated are the $5,000.00 amount of the February 12,1990 invoice and the $3,540.00 total on the January 18,1990 work and materials summary prepared for trial by R & D. The $5,000.00 amount was, however, paid by the defendant on the invoice date and cannot be recovered again by R & D in this action. Moreover, the $5,000.00 figure was a net balance calculated as the addition of certain extras to the total foundation price of $6,000.00, less the defendants’ initial $2,000.00 deposit. The $3,540.00 amount sought by R & D in its trial summary included the Cascelli bill for foundation work which, at least arguably, should have been included in the $6,000.00 total foundation price which, again, was paid by the defendants.
In short, the court’s finding of damages in the amount of $8,540.00 was “clearly erroneous” as providing for duplicate payments to R & D for labor and materials.
5. Accordingly, the trial court’s judgment for R & D is vacated, and the matter is returned to the trial courtfor a new hearing for the assessment and award of damages, if any, to R & D in quantum meruit. The court’s finding for R & D on the defendants’ counterclaim is affirmed. So ordered.

 Although the defendants also counterclaimed for an alleged violation of G.L.c. 140D, §10 by R & D, they requested no Dist./Mun. Cts. R. Civ. P., Rule 64(b) ruling on such issue, failed to raise it in their brief and ultimately waived it an oral argument before this Division.

 Co-defendant Ladan Shirazi, defendant Reza Shirazi’s wife, viewed a home built by R & D, but left all other dealings with R & D to her husband. The defendants filed no request for ruling of law concerning her separate status. We decline to consider an issue raised for the first time on appeal. Commissioner of Correc. v. McCabe, 410 Mass. 847, 850 n.7 (1991); Lease-it, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 397 (1992).

 The trial judge, for convenience, referred to Sparrow as the “plaintiff” and the “owner” of R & D. All dealings with the defendant were conducted by Sparrow on behalf of R & D. No issue has been raised as to Sparrow’s legal status.

 A An agreement providing for the sale or lease of goods, or for the rendering of services, or both, primarily for personal, family or household purposes in excess of twenty-five dollars in value and which is consummated by a party thereto at a place other than the address of the seller or lessor, which may be his main office or branch thereof, may be cancelled by the buyer for other than the seller’s or lessor's breach... .provided the buyer, not later than midnight of the third business day following execution of the agreement, notifies the seller or lessor that he is cancelling, and such cancellation shall be effective thereupon.
“B. Each such agreement shall be in writing... containing... all the terms agreed upon by the parties or required by law. The failure to include a required or agreed term or to deliver a copy of the agreement signed by the seller or lessor shall give the buyer the right to cancel said agreement until the omitted term is provided or the copy of the agreement delivered. In either case, the time period daring which the buyer may cancel under subsection A shall not commence until the failure to include terms or deliver a copy has been corrected.
“D. In the event of cancellation pursuant to this section, the seller or lessor shall within two business days of the receipt of any valid notice of cancellation (i) refund all payments made, including any down pawment made tinder the agreement;...
“The seller or lessor shall be entitled to reclaim and the buyer shall return whenever possible or hold at the seller’s disposal any goods received by the buyer under the agreement;. .. “F. A violation of this section shall constitute a violation of chapter ninety-three A.”

 Subsequent to the commencement of this action, the Legislature enacted G.L.c. 142A (St 1991, c.453), a comprehensive statute regulating home improvement contracts in excess of $1,000.00. Section 2 of G.L.c. 142Amandates, inter alia, that such contracts be in writing and set forth the home owners’ G.L.c. 93, §48 right of cancellation. Section 2 further provides, however, that a contract is not invalid solely because of non-compliance with G.Lc. 142A requirements.